We saved this group for last. I will call the last case of the day. Test Masters v. State Farm, Mr. McBride. Good morning. May it please the Court. Brendan McBride here on behalf of Test Masters Educ Svc, Inc. which I'll frequently refer to probably as TES, just to make it a little clearer, because there's two companies here who claim to do business under the name Test Masters. You're .com, right? They're .net? We have the .com. They have .net. That's correct. Yes. Yeah. Or the Texas Test Masters as opposed to the California Test Masters is another way to kind of think about them. The other company I'll often refer to as just SING, because it does business under the name Test Masters, but actually the name of it is Robbins SING Educational Services, and it's run by a gentleman named Robin SING. So TES and SING. This is an insurance coverage dispute solely limited to the duty to defend. There is no issue about the duty to indemnify involved in this case other than incidental as part of the duty to defend analysis as it's applied in these sorts of cases. TES was insured under a State Farm commercial general liability policy that included advertising injury coverage. The policy's advertising injury coverage included coverage for claims asserted against TES for trade dress. None of that part of the case is disputed. So we are all in agreement that this is purely an eight corners duty to defend legal issue. And that issue is a very specific one. Given the standard of review under Texas law for duty to defend insurance coverage disputes, that all doubts about whether a claim is potentially covered must be resolved as a matter of law in favor of the insured at the duty to defend stage. The question is, can the amended counterclaims that were asserted against TES by Robin SING reasonably be construed as a claim based on a trade dress infringement? Now, this has a curious wrinkle in the facts of this case because when the case was originally, or when the counterclaims were originally filed against TES by Mr. SING, State Farm admitted that there was potentially a trade dress claim asserted in those original counterclaims. And they assumed the defense of TES against. At that time, was there any indication by State Farm lords of why? Was there any specificity in their identifying what the claim was? No, Your Honor. In our reply brief, we cite to the record, which is the letter accepting the claim under a reservation of rights. And the statement in there was simply that it arguably, I believe the phrase is arguably, presents a claim for trade dress infringement, and then in parentheses, advertising injury, close parentheses. So no identification of paragraph X of the complaint raises the claim? No. The idea that it was related to a specific factual allegation, that if you took that out, it totally was not a trade dress claim, wasn't addressed in the reservation of rights letter. It was simply that, given the pleadings as they stand, it arguably presents a case for trade dress infringement under the advertising injury coverage. Do you have any precedent that says the fact that you accept, you agree to the duty to defend, especially where it's with a reservation of rights, that somehow that's material to a subsequent amendment and a decision not to offend? No. Do you have a case law supporting that? I don't. I'm really at a loss as to why we're going into all of this. He said, she said before the amended counterclaim was filed. And that isn't my argument, that they're bound by having accepted it at that point. I know that, but both of you spent so much time in your briefs on that. I was amazed, especially the Pelley's brief. Well, the reason we did is because I think all the way up through the summary judgment briefing and the argument in the district court, that is how State Farm framed the issue, that they continued to argue and admit that that factual allegation about the clickable U.S. map on the website was what prompted them to believe that it was covered. And so I think it just shows the scope of what the real dispute is here. And the dispute is if that specific factual allegation is removed, where the amended counterclaim still has the allegation that there's a confusingly similar website and some other facts about misrepresentations that don't specifically relate to a trademark, can you say categorically that that's now not potentially a trade dress claim? What Singh alleged was a combination of factors that he said confused consumers about whose business they were dealing with. Essentially that it was a deliberate scheme by my client, he says, TES, to convince consumers when they came to my client's website that they were dealing with his website. And so along the way he says that it's a confusingly similar website. He talks about representations about the nature and quality of TES's services,  that are made to make it look like TES was offering the types of services and in the places where he was offering them. If you look at the pleading as a whole, I think it's reasonable to construe, at the outset I'll concede that the primary goal of his counterclaims was to reassert his trademark. There's no doubt about that. There's paragraph after paragraph about a trademark infringement and an attempt to reassert his claim for that testmasters.com website. He had lost his trademark on a couple of occasions already at that point, and the court had at one point invited him to try and relitigate it if he could try to prove that there was a secondary meaning. Are you asserting or do you have a case that says when we move from trade dress to web dress, the sort of bright line of decor, image, appearance, begins to encompass functionality and factual representations that ordinarily wouldn't be encompassed? I don't know that that's clear under the case law, and that's part of it. But do you have a case that suggests a broader? Oh, definitely, yeah. In fact, I think 2 pesos is a good example of that. You have sort of the traditional notion of trade dress that most cases talk about is the packaging of a product, you know, the Snickers bar packaging or the color of the packaging or the container that something's in. 2 pesos went beyond that and said that it includes, you know, for example, the layout of the restaurant and the overall image and promotion of the goods, and they even say sales techniques are part of that trade dress. And you're right. I mean, the service marks what's really arguably confusing everybody, arguably. That's a separate litigation. But when you look at these websites, what do you identify as any confusingly similar appearance? These things seem to be to me just, okay, we have GRE, LSAT, blah, blah, blah, blah, and those elements, and we're at these places and locations. They're factual statements. But neither website, it seems, neither party is identifying appearance and decor that layout. In the original counterclaim, there was the allegation about a clickable website. I know, but that's the map. The map's gone, which is... But I don't necessarily agree that the map's gone. Okay. The allegation's taken out, but it fits still within the allegation that he had before that it's a confusingly similar website, that after the ruling in which he lost his trademark claim that they deliberately altered the website to make it confusingly similar. You need to explain that a little bit, because you say the clickable map or whatever is now taken out, and there's no dispute about that. Right. But you say it's still in the case. Right, because of the rule that applies under Texas law when you are analyzing the duty to defend at this stage of the proceedings. So we only look at a... That duty is any plausible claim? That duty is any claim, facts that are stated in the complaint, and any facts that could be reasonably inferred from them. Any ambiguities or doubts have to be resolved... Tell us the facts that are stated and the facts that could be reasonably inferred. The facts stated is that they deliberately modified the website to make it confusingly similar. That does not preclude that he's still alleging that there were images or even colors or anything else that could fall within the scope of that fact. Well, counsel, are you saying it's enough just to claim the websites are confusingly similar or on Iqbal, Twombly, etc.? You have to identify where they're confusingly similar. And do you agree that you have to identify how they're confusingly similar? I think for purposes like to survive an Iqbal, Twombly kind of challenge or to prove it up on the merits of the claim itself, yeah, you would have to. But we're not... But that's not the posture of this case. The posture of this case is could you infer from the fact that he's alleging it's confusingly similar? Iqbal called me too much, but you need an allegation. You need something, do you not, to link this to the insurance coverage, the four corners of the policy? And it seems to me that when you say the map is still in the case, the only reason it seems to me that that map keeps being discussed is that that is the most direct link to traditional trade dress kind of analysis, that it's an appearance issue. And the rest of your claims, you had five maybe paragraphs initially, and now you've added two more maybe in your reply brief. It's just hard to make those fit within general appearance kinds of analysis. Well, I think there's a couple issues here. I'm not just limiting it to the map. I think that the phrase that the website was confusingly similar can reasonably be construed to be more than just the map. It could have, if the case developed that way, it could have included based on that allegation that it was the color scheme or it was the general layout of the site. My brief also deals with another specific thing he did allege factually, which is that there was information misrepresenting the nature, scope, and location of services to make it look like the services that were talked about on that website were Mr. Singh's services. That almost seems to be an argument that if there's a trade dress claim, if one automobile manufacturer says we sell cars and somebody else creates a website that says we sell cars, we sell them in all these cities. Whatever that may be, it doesn't seem to be trickery. It doesn't seem to be a trade dress sort of confusing. You have competitors. To be in the same business, to be in competition, is not to infringe on trade dress. I don't necessarily disagree that it would not be a very good trade dress claim, but at that point you're on the merits of the claim, and I think at this stage that's not what we're looking at. We're looking at what could have been done with this case from the point that we're looking at the four corners of the pleading, which alleges that consumers were confused by a confusingly similar website. Let's talk about that precise language, and what concerned the district judge is after confusingly similar, you then explain what you mean by confusingly similar. Comma, purporting to offer LSAT prep courses in every state. So you move from an appearance issue, and I'm using appearance as a general rubric for all the things that might fit under traditional trade dress, and you can tell us why that's too limited. You move from an appearance issue to something is more of just how they act in the marketplace, and not how they appear in the marketplace. I think at that point that that is how they were trying to make out a trade dress claim. I don't think it's a good trade dress claim, but that is what he was trying to do. If you read the pleading as a whole, definitely the first thing he was trying to do was reassert his trademark, and he was trying to assert a secondary meaning, but he was a whole set of allegations in the original counterclaim and the amended counterclaim about things that TES specifically did itself, which is not secondary meaning. This is stuff TES did that were intended to confuse consumers into believing that they were dealing with Robin Sing instead of TES. And that is arguably an attempt, and reasonably arguably, an attempt to try to create a trade dress claim. On the merits, it's probably not a very good trade dress claim. What's your best case that sort of false advertising, false marketing, can be encompassed within trade dress? Well, 2 pesos says that it can be. It says that trade dress can include a physical appearance of things, but it also can include marketing techniques. And the other thing that's curious about this, and it's an interesting academic question, is to the extent that courts, including this court, have keyed the idea of trade dress to Section 43 of the Lanham Act, well, then what is trade dress under the Lanham Act? Because the statute, Section 43A or 1125A1, doesn't mention trade dress, and it doesn't say anything about visual representations of anything either. It talks about essentially two types of claims. It talks about infringements on trade names, symbols, devices, or misrepresentations that confuse consumers as to the origin of goods and services. Now, just going back and looking through the amended answer, et cetera, I certainly could be wrong, but I don't believe it ever uses the term trade dress. It uses the term trademark, for example, in paragraph 60, first counterclaim for relief, but it never uses the term trade dress. That's correct. I agree that it does not use the phrase trade dress at any point in the amended account. But it did not use it in the first counterclaim either. And the other issue here is what he's alleging is something other than a trademark infringement. He was trying to hedge his bets and have an additional claim, if you read it fairly. He was trying to have an additional claim if he couldn't make out secondary meaning to reassert his trademark. He was trying to say that they were in other ways confusing consumers. I don't think he would have ever won on that, but that's not the question at this stage. That's what he was trying to do. He was trying to hedge his bets and make a separate claim that this company did other stuff to confuse people into thinking they were dealing with me apart from using a name that I'm now trying to reassert a trademark right to. And so what we're asking the court to do, I'll sum up briefly, these were cross motions for summary judgment, so we're asking the court to reverse the granting of State Farm's summary judgment, to reverse the district court's denial of TES's summary judgment, render partial judgment that State Farm breached the insurance contract when they retendered the defense, and remand the case to the district court for determination of damages and any other related issues. Thank you, Your Honors. May it please the Court. I'm Jack McKinley from Houston here to argue for State Farm. Certainly this court, different panels, is very well acquainted with the disputes that arise between TES and Robin Singh, and there's no doubt that there's confusing similarities. Confusing similarity is abundant, and that's undisputed. And how could it be otherwise? The parties have the same name, they allegedly operate in the very same places, and they provide exactly the same services. It would be impossible for there to be anything but confusing similarity, and certainly the Lanham Act is focused upon confusing similarity. If that were the end of the inquiry, everything would be within the scope of the Lanham Act and we could equate all the Lanham Act violations together and say any one of them will trigger coverage. But the policy is our focus, and State Farm's policy covers only trade dress. The Supreme Court has said that refers to or is linked to symbol or device in the Lanham Act. Is there any, I doubt there is, but is there any evidence in the record as to why the policy on the advertising clause included trade dress but not trademark infringement? There's not evidence, Your Honor, but I would, without going outside the record and just staying in the law, I think it's apparent from a considerable amount of precedent that insurance companies, when they see interpretations they didn't intend, change their language to prevent those interpretations from determining their coverage. And apart from that, not to blame the courts, they also see a history of payments of certain kinds that they didn't anticipate, and from an underwriting standpoint they decide we better cabin this coverage and we can only charge so much in the market and for this premium we can only do this. So they do that all the time, mostly with the CGL policy in personal injury, bodily injury, property damage, but they also do it with advertising injury and that's what's going on here. Counsel, one of the key questions in this case is what is trade dress in current understanding? He's trying to say it goes beyond appearance, talks about 2 pesos versus cabanas or whatever they're named. Taco cabana. What does that case hold? Is that one of the best cases for enlarging the understanding of trade dress? I'm surprised to hear counsel citing 2 pesos as a good case for appellant because 2 pesos was not about, yes, it was about trade dress. It was about what most of us would think of as trade dress. You walk into in the day a 2 pesos and it did in fact look just like a taco cabana. They had the same color schemes. They arranged their layout the same way. They had the same type of food. It was semi-fast service. It was a knockoff. What about marketing techniques, one phrase that your opponent mentioned today? Marketing techniques I think in this case would be implicated if there were allegations. Certainly a website is marketing, but a website in and of itself is not trade dress. As you've pointed out, this is a very, very functional website. An example of trade dress for services would be, let's say for LSAT, you dress your instructors up in costume appropriate to what they're teaching, you know, Yeah, you do something that's specific to you that everyone's going to think of, oh, they're the people who do that, that makes you distinctive. But there's none of that here. There's not an allegation of any of that. I don't know how TES and SING run their LSAT courses, but if they do it in any distinctive way, that isn't alleged. What about the mere allegation of similarity that they modify their website to create this similarity? Is a naked allegation insufficient? And they did. That's alleged, and it appears to be true. They alleged that there are many, many statements made by TES about itself that are utterly false or artfully misleading, such as, sorry, we're no longer offering courses in these cities, which would be everywhere in the United States except Texas, implying that once upon a time they did. Well, but they actually say the website is confusingly similar, an object. We don't have any screen grabs, I think, in the evidence here, in the nature of this, to know what the websites look like. But they're saying, I would read that to say the appearance of the websites is similar. I don't think so, Your Honor. I know it's a lot of words and it's tough slogging, but they do repeatedly break down the website allegations with content in the website. They're very specific about what they say is misleading. The law says that's a bright line because more and more on the web, you know, you get something from Thrifty Car Rental, it'll be a picture of a truck, and then you click on it. So it's got content embedded in image. Well, we were concerned about that with the map copying allegation, and that's why there was a defense. That's out, clearly. And so what we're left with is a different Lanham Act violation. The Lanham Act specifies misrepresentations are violations because unfair competition was merged with trademark law in this act. And so those are all misrepresentations. They do a very good job in their brief of pointing out all the misrepresentations and how they artfully misled consumers, but those all fall into the category of misrepresentations, none of which is trade trusts. A misrepresentation is just a false statement or a misleading statement, and certainly that's very clear. But the biggest misleading fact of all is just the use of testmasters going and putting it on a website, which they did win the website in the TTAB, and then the district court upheld it or the circuit upheld it. They're entitled to use the website, but they're not entitled to use it in a misleading way. And the allegation is you used it in a misleading way, but none of those focus on what this court and the Supreme Court treat as trade trusts. This court has referred to trade trusts as incidental, arbitrary, or ornamental. That's in the Evendorf case. The Supreme Court in Tupesos refers to it as fanciful, arbitrary, or suggestive, the things I was suggesting earlier. None of those are related to the use of your name. That's a core identifier. There's nothing fanciful or subjective or arbitrary about a name. It's not ornamental. It's an identifier. And misrepresentations, those aren't fanciful, arbitrary, suggestive, or ornamental. They are flat-out misstatements. In paragraph 49, which is title subpart F, TES is false and misleading statements of fact. They list false statements, claimed false statements of fact on the website A through B, but they never say, he never says, these are identical to what's on my website. Yes, Your Honor. That is true. And the point number one is they're all false statements. None of them are trade trusts. And, yes, you're exactly right. That's TES talking about itself. You can misrepresent facts to consumers about yourself, and that can be a Lanham Act violation. But if we're talking about a trade trust violation, you have to be stealing your competitor's trade trust. It's impossible to steal your own trade trust. However, you can misrepresent things about yourself. So trade trust allegations in this case would have to be about taking the trade trust of Singh. And that's never alleged. And they're not really even clear about what trade trust would be. It's remarkable that we're to this point and they don't ever say what would trade trust look like. They just equate it with misrepresentations and use of a trade name. And certainly there's an abundance of precedent out there about name and misrepresentation. But they just treat it as though it's equivalent to trade trust. They don't have a single case in the country that treats trade trust as though it is similar to or can be equated with trade name infringement or misrepresentation. They cite one case in their reply brief from Pennsylvania. They conflate the court discussing unfair competition law with trade trust. There's a two-part statement there. And the second part of the statement that they quote as though it indicates trade trust is in play when there's unfair competition is, in fact, just the court is not talking about trade trust at all. It's only talking about unfair competition. The Ninth Circuit Mattel case, the Barbie doll case. No, it was a district court case. Oh, it was district court? It was near the end of their reply brief. No, no, no, the case I remember that they cited for this general proposition in the principal brief. Do you remember the Mattel decision? As a general proposition, I would agree in a Barbie doll case there are all kinds of accoutrements that go with Barbie dolls. Yes. There are hair curler cases. There are a great many cases out there that talk about how you present and you package your product. Color, slogan, logo. I mean there are many, many examples of trade dress, Nike, Adidas. The list is endless. And it's remarkable that we're to this point and there's not been a single example offered, nor is there any precedent that's offered that says this is what trade dress looks like and that's why it exists here. They don't have it. They just continue to try to conflate trade name. Partly, though, the contract is talking about covering no advertisements on the Internet, right? There's no question. It has to be in the course of your advertisement. There must be an infringement of trade dress in the course of your advertisement. No question the website is an advertisement. But they don't show any trade dress in there. The map, I don't think actually on reflection the map wasn't really trade dress because it's functional. Under the traffic's decision from the Supreme Court, it's functional. And so they got a defense that they weren't entitled to for quite a while at a lot of expense, but then State Farm eventually woke up and cut it off. Eight months go by when, you know, they change one or two little things and it wasn't noticed that they dropped their map allegation. But as Your Honor pointed out, it isn't really about comparing what was there now and comparing what's there today. It's really about what does the petition allege. It's a complaint allegation rule analysis. It's either in the petition and it triggers coverage or it doesn't. And I don't think it triggered it in the original either, but it certainly doesn't trigger it in the amended. The closest they came was the map allegation. For example, if they had a distinctive map, if they had things that were unique to each state and had images in each state to illustrate their medical or their legal testing, judges, doctors, whatever, subject matter, art, that was their art, and it's on a map, yes, that's trade dress, absolutely. But that's not what's alleged. They just allege a map and it lists locations where you offered courses. And their complaint isn't really about using a map. If beyond similarly confusing or confusingly similar, they had said happy law professor, theirs and ours. Right. Then that's, they've got it? Well, if you. Picture of happy classroom. If you had imagery that was sufficiently distinctive that it could be associated just with you. Yeah. It's like your look. You look at it like you look at Nike and you don't even have to say the word Nike, you see the swoosh. But the swoosh is a mark, not a trade dress, right? True. Or it could be how you package it. It could be, a better example would be the colors perhaps of hair curlers in one piece of litigation. But there are different ways you could have trade dress, but they don't ever allege. Do you, both of you clearly know this field very well. Do you, I mean, obviously the web is slightly going to web dress this whole content. Do you know of any law review articles that are illuminating? I looked, Your Honor, but I confess I probably, I may have only looked in Texas. I didn't find anything that addressed this. I scoured as recently as last night. I don't find any precedent in the entire nation that's anywhere close to these facts. And I would suggest to the Court that indicates how far off base they are. Counsel, let me ask you just a bit about the specifics of trade dress and websites. There is one article I guess was cited by opposing counsel, at least in the Third Circuit case of Fairwind Sailing from American University Law Review. But one of the things in Fairwind that makes me wonder a bit about whether I have a complete grasp of trade dress and the web page situation, one of the things that may be different about websites is to freshen the look of a lot of the websites that I may have gone to for a number of years changes its look. It gives an entirely new arrangement to the dismay probably of people who used it for a civil period of time until they get used to where new things are. And there may be different colors. There may be different arrangements altogether. In Fairwind, which dismissed the trade dress claim, it says Fairwind has failed to give defendants adequate notice of what overall look it wishes to protect. Therefore, its trade dress claim cannot survive. Is there some sense that litigation that someone who wants to protect trade dress or thinks it's being infringed declares what is distinctive about its website? That would absolutely be true if this were intellectual property litigation. They would most certainly have to do that. You would first of all have to identify what is your intellectual property before you can expect a court to protect it. They're saying that their website itself has been the trade dress infringement has occurred. Singh was making that argument. So Singh in his complaint would have said this is what's in our website and this is what is in the other website that is confusingly similar. Is that all that this is probably talking about, that you must give defendants adequate notice of what? It's one thing to say what you think has been replicated. What's throbbing is the court's statement of that the defendant should be given adequate notice of what look it wishes to protect. I think if you're—it's difficult to answer in this case because, first of all, this is a coverage case. But focusing on the underlying case, I would first of all say there isn't anything that suggests trade dress. So there wouldn't have been any reason for that specificity of pleading to be required. But if, hypothetically, they put a trade dress count in there, yes, it would have been appropriate to come back and ask for more specific pleading saying you haven't said to us what is your trade dress. How can we defend? You don't even tell us what your trade dress is. But that isn't an issue in this insurance coverage case because all that's at issue here is whether there is, in fact, an allegation of trade dress at all, whether we can see the facts alleged as suggesting trade dress. They don't even have to use the word. I agree it would be sufficient if they alleged facts indicating trade dress, but they don't. The Maryland casualty case, unpublished, ours, American recommended mailers. Yes. That the reasoning there is the reasoning you embrace? I do. I believe that that case is correctly decided and applies here. I think that although better than that case are the cases that, more important, are the cases that apply the Texas Complaint Delegation Rule. Our obligation is to look at alleged facts. So we look at alleged facts, we see confusing similarity. Well, that's the entire Lanham Act. That doesn't tell us there's trade dress. We see misrepresentations. Again, that's specifically in the Lanham Act and something other than trade dress. And we see our trade name and our service mark. Again, all those are specifically identified in the Lanham Act as violations. So all that we see in their pleading are specific Lanham Act violations, none of which is trade dress. That's why I think Judge Werlein said, looking at their best paragraphs, what they say comes closest to indicating trade dress. There's not a hint of it. There's not a hint of it in their pleading, and there's no case in the entire country, they cite, that equates these allegations with trade dress. All right, counsel. Thank you. I think that Justice Barksdale, I think, makes an interesting point when he discusses the fact that there's no allegation that there's misrepresentations A through E are similar to anything that was on Singh's website. And I think what that shows is there really is a lot more going on in this complaint than it appears, because he's not saying that the website is confusingly similar because it has misrepresentations about their own products and services. What he's saying is it's confusingly similar because those misrepresentations relate to things that the public in general associates with Singh's way of doing business. It's not necessarily that that website looks like mine. Well, not necessarily. It could be that. I think it could be reasonably inferred in that, that he's talking about the actual similarity of the website, though I agree the exact specifics of the colors or whatever that is, he doesn't go into. But it's the broader scope of trying to allege that his trade dress is an association the public has with the way he does business, with the geographical location that he does, the live classes. And the reason that those misrepresentations are mentioned in there is because he believes that that was an attempt to create the impression that TES does business in a way that the public associates with Singh. I want to come back to the standard review on this and remind the Court that, you know, this isn't like a 12b6 motion. If there's a lack of sufficient detail in the facts alleged, that doesn't go against the claimant like it might on a discussion of the merits of the claim. In Wink, Service Lloyd's Insurance Company v. J.C. Wink, which is cited in our reply brief, the rule is, quote, if the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend. And as this Court has said, if there's a doubt, the insurer is supposed to defend. And that raises an interesting question because trade dress is an idea that is, as I stand here in front of you today, is in a great deal of flux. You have a statute that's referred to all the time as being the trade dress statute that doesn't say anything about trade dress and doesn't say anything about visual representations. If a trade dress claim is in there, it's got to be either the same thing as a trademark claim or it's misrepresentations that confuse consumers about the origin of goods and services. The Sixth Circuit in Abercrombie & Fitch Stores v. American Eagle Outfitters, 280 Fed 3619, notes that trade dress is evolving, that it seems to be headed toward this notion that anything could potentially constitute a trade dress. And it clearly includes marketing techniques. The problem with deciding— When you say that, that's the dicta in dos pesos. But what's a good case where trade dress clearly—you know, that's really important because you said clearly includes. But that wasn't the facts presented to the Supreme Court. I agree. So what's a good case? Because that would be very decisive. I could not find a case where it was only sales techniques, to be honest with you. I could not find one. But that raises an interesting question that I was just going to get into, which is if you have a gray area of the law and you can't find a specific case that supports where it could go, does that mean that the insurer doesn't owe a defense for that? Because then you end up with the insurer who paid for the insurance coverage. They go and fight about whether or not this could have been a trade dress because this could have been advanced possibly as a trade dress claim. Singh may have popped up. He may have popped up. He didn't, or it's irrelevant whether he did or not. But he may have popped up and said, yeah, this is also a trade dress claim. I want to get trade dress infringement because I'm not going to win on my secondary meaning argument and reassert my trademark. So if they'd gone all through that process and some court were to agree with him that, yeah, trade dress is a little broader. It is evolving. It does include similarities in a website. It does include misrepresenting things on your website to make people associate your business with what they believe to be associated with his. Well, then the insured is out the entirety of the defense, even though it turned out it was a trade dress claim, which is why there's a rule, a very strong rule in this context, that if there's any doubt about whether it states a claim that falls without reference to the merits, even if they're fraudulent, that if there's any doubt about whether or not those pleadings can be construed to state a claim that's covered, that has to be resolved in favor of the insured. That's exactly what they did, and then that doubt disappeared. I think State Farm might take the position that's what we did for whatever period of time before the complaint was amended. Yeah, but I think that the underlying ambiguity is in the second complaint as well. I think that the problem is still there as to what exactly he was alleging. He was clearly looking for something other than the secondary meaning of his trademark. He was clearly looking to sue them for something else if he couldn't establish his secondary meaning, and that related to something about how the website was confusingly similar and led consumers to believe they were dealing with the wrong company. Thank you, Your Honor. All right, counsel. Thank you both.